Argued March 19, decided March 25, 1913.

DUNLAP *v.* LEWIS.

(130 Pac. 973.)

**Evidence—Vendor and Purchaser—Title Bond—Delivery.**
1. There is no set form in which delivery of a bond for a deed must be made, but the intention of the parties must be gathered from their language or conduct or both, and the legal effect of what they say cannot be altered or modified by their undisclosed intention or secret understanding.

**Vendor and Purchaser—Title Bond—Delivery.**
2. When a bond for a deed is once accepted by the obligee, he cannot subsequently reject it so as to make it void.

**Vendor and Purchaser—Title Bond—Delivery.**
3. A contract for the sale of land provided for a bond for a deed to be substituted therefor within 30 days. A copy of the contract with a certificate of deposit for the down payment and notes for the balance were placed in escrow. A bond for a deed was executed containing a stipulation not contained in the contract that the purchaser would pay all taxes and assessments thereafter levied or assessed, and was given to the purchaser, the certificate of deposit and the notes being obtained from the bank with which they were left in escrow and delivered to the vendor. Subsequently the purchaser rejected the bond because of the provision respecting taxes and assessments. Held, that the trial court was justified in finding that the delivery of the bond was complete and effectual; the acts performed evidencing an intent to perfect the instrument.

Vendor and Purchaser—Title Bond—Delivery.

4. Where a purchaser was given possession of land under a title bond, and his possession had not been disturbed, he could not subsequent to the delivery of the bond reject it because it contained no provision that he should have possession.

Vendor and Purchaser—Taxes and Assessments—Enforcement by Vendor.

5. Where a title bond bound the purchaser to pay all taxes and assessments, the vendor could sue to compel him to pay liens created by taxes and assessments in order to preserve his security for the deferred payments.

From Klamath: HENRY L. BENSON, Judge.

This is a suit by H. R. Dunlap against Arthur C. Lewis relating to the sale and purchase of certain lots in the City of Klamath Falls. The facts are fully set forth in the opinion. There was a decree in favor of plaintiff, from which defendant appeals.                    MODIFIED.

For appellant there was a brief and an oral argument by *Mr. J. C. Rutenic.*

For respondent there was a brief over the names of *Messrs. Stone & Barrett,* with an oral argument by *Mr. C. F. Stone.*

MR. JUSTICE BEAN delivered the opinion of the court.

On April 19, 1910, plaintiff and defendant executed a written contract whereby Dunlap sold and agreed to convey to Lewis by warranty deed free from incumbrance lots 1 and 2, block 38, in the City of Klamath Falls, Klamath County, Oregon, for the sum of $12,000, payable, $1,500 in cash, which was paid on the date of the execution of the contract, a certain other lot as payment of $2,500, and the balance in annual payments, the last of which was to be paid on or before April 19, 1915, according to the tenor of five promissory notes executed by

Lewis. It was stipulated that the contract would be taken up within 30 days, and that a bond for a deed of the two lots, conditioned upon making the deferred payments, would be given in lieu thereof; that the money paid should be held by the First National Bank during the preparation and examination of the abstract of title. The contract was executed in duplicate, and contained other stipulations. It contained no agreement as to the payment of taxes and assessments. One copy of the contract, together with a certificate of deposit for $1,500, and the notes, were placed in escrow at the bank. Lewis was given possession of the lots, and has since retained the same. On May 13, 1910, Dunlap executed a bond for a deed of the lots in the sum of $25,000, with the stipulated conditions, and containing the following clause: "Arthur C. Lewis agrees to pay all taxes and assessments hereinafter levied or assessed against said lots." The bond was read to Mr. Lewis, who made no objection thereto at the time. Both parties went to the First National Bank and obtained the certificate of deposit, notes, and copy of contract. They then went to the Klamath County Bank, where Dunlap did business. The certificate of deposit and the notes were delivered to Dunlap, and the bond for a deed to Lewis. Soon afterwards, just how long is disputed, Mr. Lewis objected to the bond for a deed because it contained no provision that he should retain possession of the lots, and no account of the clause therein regarding taxes and assessments. He contends that he returned the bond to Mr. Dunlap, who took the same away. On the next day the bond was found on the desk of Lewis' attorney. Later taxes for 1910, amounting to $87.73, were levied upon the lots. During 1910 and 1911 the City of Klamath Falls levied an assessment of $2,434.53 on the same for the purpose of paving the adjoining streets, which, being unpaid, became a lien upon the property. Defendant caused the contract to be

recorded in the county records. The bond remained at the attorney's office, and was filed in court with the answer. The deed to Dunlap of the lot agreed to be taken as a part payment was executed April 21, 1910, and delivered to him on or about May 19, 1910. Dunlap asserts that Lewis then made objection to the bond for a deed for the first time. On April 19, 1911, Lewis made the $1,000 payment then due. It appears that Lewis paid a sewer assessment on the lots, and also petitioned the city council for a portion of the street improvements for which the assessment was made. Lewis refuses to accept the bond. In his answer he asks that Mr. Dunlap be required to execute a bond for a deed in accordance with the contract.

Defendant contends that the bond was never accepted, and that, according to the contract which he claims is still in force, plaintiff should pay the taxes and assessments. Plaintiff claims that the bond was delivered and accepted by defendant, and that he should be compelled to make such payments. Wilbur White, a real estate agent, accompanied Dunlap and Lewis to the bank when the papers were transferred and both he and Leslie Rogers, assistant cashier of the Klamath County Bank, testified in regard to the transaction when the bond was delivered. Defendant's claim is based upon his refusal to accept the bond made after the delivery and the return thereof.

1, 2. There is no precise and set form in which delivery of a bond must be made. The intention of the parties must be gathered from their language or their conduct or both, and the legal effect of what they say and do cannot be altered or modified by the undisclosed intention or secret understanding of either, and, when once accepted by the obligee, he cannot subsequently disagree to it so as to make it void. 5 Cyc. 740, 741; *National Building & Loan Association* v. *Day* (Ky.) 63 S. W. 591.

3. The trial court found that the delivery of the bond for a deed by Dunlap was complete and effectual. After a careful consideration of the evidence, we think that the same fully justifies such finding. Upon the transfer of the bond for a deed, the certificate of deposit, and notes, Dunlap parted unconditionally with the instrument in question, and had no further right to it. The acts performed evinced an intent on the part of Dunlap to perfect the instrument, and to make it at once the absolute property of Lewis.

4, 5. Lewis has been given possession of the real property. This possession does not appear to have been disturbed; therefore he has no cause for complaint on account of that matter. Plaintiff is entitled to have the defendant compelled to pay the liens created by the taxes and assessments in order to preserve his security for the payment of the notes. In framing the decree in the lower court a provision was included for an execution to enforce the payment of any taxes or assessments levied during the life of the bond for a deed in the event of default being made by defendant in the payment of the same. This provision should be eliminated. With this correction, the decree should be affirmed, plaintiff to recover his costs and disbursements; and it is so ordered.

MODIFIED.